JONATHAN G. ROSE (DC SBN 446207) (*Pro hac vice* application pending)
**DLA PIPER LLP (US)**
500 EIGHTH STREET, NW
WASHINGTON, DC 20004
TEL:  202.799.4000
FAX: 202.799.5000
*jonathan.rose@us.dlapiper.com*

ROBERT R. YAP (SBN 263763)
**DLA PIPER LLP (US)**
2000 AVENUE OF THE STARS
SUITE 400, NORTH TOWER
LOS ANGELES, CALIFORNIA 90067
TEL:  310.595.3000
FAX: 310.595.3300
*robert.yap@us.dlapiper.com*

Attorneys for Plaintiffs
DLA PIPER LLP (US) PROFIT SHARING AND
401K SAVINGS PLAN and PLAN COMMITTEE

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| DLA PIPER LLP (US) PROFIT SHARING AND 401K SAVINGS PLAN, an employee pension benefit plan governed by the Employee Retirement Income Security Act of 1974, as amended; and PLAN COMMITTEE, in its capacity as Plan Fiduciary,<br><br>Plaintiffs,<br><br>v.<br><br>DANA DAVIS ROBINSON, an individual; and DOES 1 through 25, inclusive,<br><br>Defendants. | CASE NO. 2:26-cv-07624<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>1. Declaratory Relief Under ERISA § 502(a)(3); 29 U.S.C. § 1132(a)(3), and 28 U.S.C. §§ 2201 and 2202<br><br>2. Injunctive Relief Under ERISA § 502(a)(3); 29 U.S.C. § 1132(a)(3)<br><br>Demand for Jury Trial:    none |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiffs DLA Piper LLP (US) Profit Sharing and 401K Savings Plan (the "Plan") and Plan Committee, in its capacity as fiduciary to the Plan, allege as follows.

## I.   INTRODUCTION

1.   This is an action by the Plan, an employee pension benefit plan governed by the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001 *et seq*. ("ERISA"), and by the Plan Committee, as administrator and fiduciary to the Plan, for declaratory and injunctive relief to prevent enforcement of a California Superior Court family law attorney's fee order that conflicts with ERISA and the governing Plan documents.

2.   This action arises from post-judgment proceedings in the marital dissolution action between Defendant Dana Davis Robinson and non-party Scott K. Robinson, *Dana Davis Robinson v. Scott K. Robinson*, case number D397678, pending in the Superior Court of California, County of Ventura. In that dissolution proceeding, Ms. Robinson sought to enforce alleged support arrears through domestic relations orders directed to Mr. Robinson's Plan account and later sought attorney's fees from the Plan based on the Plan's ERISA-governed administration of those orders.

3.   The Plan does not seek in any way to interfere with the Superior Court's adjudication of the marital dissolution between Ms. Robinson and Mr. Robinson. Nor does the Plan dispute its obligation to comply with a valid qualified domestic relations order ("QDRO") that satisfies ERISA and the Plan's governing documents. The Plan has done exactly what ERISA requires. It accepted the Superior Court's September 9, 2022 QDRO ("First Order") and distributed $49,975.05 to Dana Davis Robinson on April 11, 2023. That distribution fully satisfied Ms. Robinson's community property interest in Mr. Robinson's Plan account, and the Plan has consistently remained ready to honor any further order that is actually qualified under ERISA.

4.   A later dispute arose from a subsequent domestic relations order issued in March 2024 and served on the Plan on or about September 6, 2024 ("Second

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Order"). The Second Order related to post-property settlement support issues and, by its express terms, required withholding and payment to Ms. Robinson only if Mr. Robinson's Plan benefits were in pay status or became payable within the limited circumstances stated in the order. Mr. Robinson was not receiving any Plan distribution, had not requested any Plan distribution, and did not request or receive any distribution within 90 days after the Plan received the Second Order. The Plan accepted the Second Order as qualified but properly notified Ms. Robinson, through counsel, that no distribution could be made because no benefits were then payable from which the Plan could withhold funds.

5. Notwithstanding the Second Order's plain limits, Ms. Robinson sought to compel immediate distribution by the Plan from Mr. Robinson's remaining vested pension benefits. On February 3, 2026, the Superior Court ordered the Plan to pay Ms. Robinson $29,376.71, plus interest, despite the fact that Mr. Robinson's benefits were not in pay status and no distribution had been requested, as required. The Plan appealed that order, which is currently pending in the California Court of Appeals. *See* the matter captioned *Dana Davis Robinson v. DLA Piper LLP (US) Profit Sharing and 401k Savings Plan*, case number B352366, pending in the California Court of Appeal, Second Appellate District, Division Six. The Plan appealed because the February 3, 2026 order conflicts with the Second Order, ERISA, and the Plan documents, and because compelling payment under those circumstances would require the Plan and its fiduciaries to make a distribution not authorized by a valid QDRO or by ERISA.

6. Ms. Robinson's attorney's fee request arose directly from that ERISA/QDRO appeal. She sought $50,000 in fees from the Plan so that she could oppose the Plan's appeal and defend the Superior Court's February 3, 2026 payment order. Her stated basis for fees, therefore, rested on the Plan's ERISA-governed conduct: its administration of the Second Order, its determination that benefits could not be distributed from Mr. Robinson's vested pension benefits when they were not

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

in pay status, its opposition to enforcement relief inconsistent with ERISA, and its appeal to protect the Plan and its fiduciaries from violating ERISA and the Plan documents.

7. This action concerns the Superior Court's June 22, 2026 order ("Attorney's Fees Order") granting Dana Davis Robinson's request for $50,000 in attorney's fees against the Plan pursuant to California Family Code section 2030. The fee order requires the Plan, which is not a spousal party in the dissolution proceeding, to pay Ms. Robinson's attorney's fees incurred to defend against the Plan's pending appeal and other litigation concerning the Plan's ERISA obligations.

8. The Attorney's Fees Order is not a QDRO and does not come close to satisfying ERISA's narrow QDRO exception. It does not assign or recognize a right to receive benefits payable with respect to a participant in the manner required by ERISA's QDRO provisions. Instead, the Court's Attorney's Fees Order imposes a monetary obligation directly on the Plan based on the Plan's exercise of its ERISA fiduciary duties in determining whether and when benefits may be paid under the Plan and under domestic relations orders served on the Plan. That ruling was erroneous under ERISA, controlling Ninth Circuit authority, and California authority recognizing that private retirement plans may pay benefits to a former spouse or dependent through a domestic relations order that satisfies ERISA's QDRO requirements.

9. ERISA preempts the Attorney's Fees Order because it is a state-court decision having the effect of law that directly "relates to" an ERISA-governed employee benefit plan and its administration. The order directly targets the Plan, imposes liability on the Plan, and penalizes the Plan for simply doing what is required, ensuring that its ERISA-based determinations regarding the administration of Plan comply with ERISA's requirements. As the Ninth Circuit has recognized, "requiring ERISA administrators to master the relevant laws of 50 states and to contend with litigation would undermine the congressional goal of 'minimizing the administrative

-3-
**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

and financial burdens' on plan administrators." *Branco v. UFCW-N. Cal. Emps. Joint Pension Plan*, 279 F.3d 1154, 1159 (9th Cir. 2002) (citing *Egelhoff v. Egelhoff*, 121 S. Ct. 1322, 1329 (2001).

10.     The Attorney's Fees Order also violates ERISA's anti-alienation provision, ERISA § 206(d)(1), 29 U.S.C. § 1056(d)(1), because it improperly requires payment from or on account of Plan assets or the Plan's administration without satisfying the requirements for a QDRO under ERISA § 206(d)(3), 29 U.S.C. § 1056(d)(3). Only a QDRO may operate as an exception to ERISA's anti-alienation rule in this context. The Superior Court therefore exceeded the narrow authority preserved for state domestic-relations courts and entered an order that ERISA makes unenforceable against the Plan and its fiduciaries.

11.     Compliance with the Attorney's Fees Order would require the Plan's fiduciaries to violate ERISA § 404(a)(1); 29 U.S.C. § 1104(a)(1), including the duties to act solely in the interest of participants and beneficiaries, to act for the exclusive purpose of providing benefits and defraying reasonable administrative expenses, to act with prudence, and to administer the Plan in accordance with governing Plan documents insofar as those documents are consistent with ERISA. Under ERISA, a state court does not possess the authority and may not transform a plan fiduciary's compliance with ERISA into a basis for a fee sanction or needs-based fee award against the Plan. *AT&T Mgmt. Pension Plan v. Tucker*, No. CV-95-2263 ABC (JRx), 902 F. Supp. 1168, 1175–78 (C.D. Cal. Aug. 14, 1995).

12.     Separately, the Attorney's Fees Order is independently void or unenforceable because only the Plan was joined in the dissolution proceeding; the Plan administrator was not joined, served, or made a party to that proceeding. The Superior Court is without authority to impose liability on a non-party Plan administrator or fiduciary that was never joined in the dissolution proceeding and over whom the Superior Court never acquired personal jurisdiction.

///

-4-

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

13.     Plaintiffs therefore seek a declaration that the Attorney's Fees Order, and any similar order requiring the Plan or its fiduciaries to pay Ms. Robinson's attorney's fees or costs arising from the Plan's ERISA-based administration of domestic relations orders, is preempted by ERISA, violates ERISA and the terms of the Plan, and is invalid and unenforceable against the Plan and its fiduciaries.

14.     Plaintiffs also seek permanent injunctive relief against Ms. Robinson, and her agents, attorneys, representatives, successors, and all persons acting in concert with her, from initiating or continuing any proceedings to enforce the Attorney's Fees Order, or any similar order against the Plan or its fiduciaries. Plaintiffs do not seek any relief against Mr. Robinson.

15.     Plaintiffs further seek an award of reasonable attorney's fees and costs under ERISA § 502(g)(1); 29 U.S.C. § 1132(g)(1), which authorizes the Court, in its discretion, to allow a reasonable attorney's fee and costs of action to either party in an ERISA action brought by a participant, beneficiary, or fiduciary. Such an award is particularly warranted here because (i) Ms. Robinson and her counsel persisted in seeking payment from the Plan after the Plan repeatedly explained that the Second Order did not permit payment unless Mr. Robinson's benefits were in pay status, and (ii) their bad-faith and vexatious litigation tactics including failing to serve the moving papers that resulted in the Attorney's Fees Order, attempting direct communications with represented Plan personnel, and other unnecessarily multiplying proceedings in an effort to coerce payment that ERISA and the Plan documents did not authorize. Ms. Robinson's and her counsel's improper conduct has forced, and continues to force, the Plan and its fiduciaries to incur unnecessary attorney's fees and costs to protect ERISA-governed Plan assets and fiduciary obligations, which Plaintiffs seek to recover under ERISA § 502(g)(1); 29 U.S.C. § 1132(g)(1).

## II.    JURISDICTION AND VENUE

16.     This Court has federal question jurisdiction under 28 U.S.C. § 1331 because this action arises under ERISA, including ERISA §§ 404, 502, 514, and

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

206(d); 29 U.S.C. §§ 1104, 1132, 1144, and 1056(d).

17.    This Court has jurisdiction under ERISA § 502(e)(1); 29 U.S.C. § 1132(e)(1), because Plaintiffs seek relief authorized by ERISA § 502(a)(3); 29 U.S.C. § 1132(a)(3).

18.    This Court has authority to grant declaratory relief under 28 U.S.C. §§ 2201 and 2202 because an actual controversy exists between Plaintiffs and Defendants regarding the validity, enforceability, and preemptive effect of ERISA as applied to the Attorney's Fees Order.

19.    This Court has authority to grant injunctive and other appropriate equitable relief under ERISA § 502(a)(3); 29 U.S.C. § 1132(a)(3), because Plaintiffs seek to enjoin acts or practices that violate ERISA and the terms of the Plan, and to obtain appropriate equitable relief to redress such violations and enforce ERISA and the Plan.

20.    Venue is proper in the Central District of California under ERISA § 502(e)(2); 29 U.S.C. § 1132(e)(2), because the Plan is administered in this District, because the acts and omissions giving rise to the claim occurred in part in this District, and because the underlying California Superior Court family law proceeding is pending in Ventura County, California, within this District.

21.    Venue is also proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in this District.

22.    The Anti-Injunction Act, 28 U.S.C. § 2283, does not bar the relief requested because ERISA § 502(a)(3); 29 U.S.C. § 1132(a)(3), expressly authorizes fiduciaries to bring civil actions in federal court to enjoin acts or practices that violate ERISA or the terms of an ERISA plan and to obtain other appropriate equitable relief. ERISA creates a specific and uniquely federal right and remedy, enforceable in federal court, to prevent violations of ERISA and the terms of an ERISA-governed plan. ERISA §§ 502(a)(3), 502(e)(1); 29 U.S.C. §§ 1132(a)(3), 1132(e)(1). That federal remedy would be frustrated if Ms. Robinson could enforce a state-court order

-6-
**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

requiring the Plan or its fiduciaries to violate ERISA, the Plan documents, or ERISA's QDRO and anti-alienation provisions. The requested injunction therefore falls within the Anti-Injunction Act's "expressly authorized" exception. 28 U.S.C. § 2283.

23.    This action is not a de facto appeal from any order entered by the Superior Court. Plaintiffs do not ask this Court to exercise appellate jurisdiction over the Superior Court, to vacate or reverse any state court judgment as between Ms. Robinson and Mr. Robinson, to review the merits of the marital dissolution proceeding, or to supervise the Superior Court's ongoing domestic-relations adjudication. Plaintiffs instead bring independent federal claims under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), to enforce ERISA and the Plan documents and to prevent Defendant Dana Davis Robinson and those acting in concert with her from enforcing or attempting to enforce orders against the Plan, the Plan administrator, the Plan fiduciaries, the Plan Committee, the Firm, or Principal Life Insurance Company in a manner that would violate ERISA.

24.    Plaintiffs' injuries arise from Ms. Robinson's efforts, demands, and threatened future efforts to enforce the Attorney's Fees Order and any similar order against the Plan, the Plan administrator, and the Plan fiduciaries, and from the resulting conflict between those enforcement efforts and Plaintiffs' independent federal duties under ERISA. Plaintiffs' claims are therefore directed to alleged acts and threatened acts by Ms. Robinson and those acting in concert with her, not to appellate review of a state court judgment. ERISA §§ 404(a)(1), 502(a)(3); 29 U.S.C. §§ 1104(a)(1), 1132(a)(3). ERISA § 502(a)(3) expressly authorizes a fiduciary to bring a civil action to enjoin any act or practice that violates ERISA or the terms of an ERISA plan, and to obtain other appropriate equitable relief to redress such violations or enforce ERISA or the terms of the plan. ERISA § 502(a)(3); 29 U.S.C. § 1132(a)(3). ERISA also gives federal district courts exclusive jurisdiction over actions brought by fiduciaries under ERISA § 502(a)(3). 29 U.S.C. § 1132(e)(1). ///

-7-
**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

25.    Because Plaintiffs assert claims within the federal courts' exclusive ERISA jurisdiction and seek prospective equitable relief to enforce ERISA and the Plan documents, the *Rooker-Feldman* doctrine does not deprive this Court of subject-matter jurisdiction. Plaintiffs seek relief necessary to prevent violations of ERISA's fiduciary duty, anti-alienation, QDRO, and preemption provisions, not appellate correction of the Superior Court's domestic-relations rulings. *See Mitchum v. Foster*, 407 U.S. 225, 237–43 (1972) (State court order at issue was an " 'an expressly authorized' exception to the anti-injunction statute"); ERISA §§ 206(d)(1), 206(d)(3), 404(a)(1), 502(a)(3), 502(e)(1), 514(a); 29 U.S.C. §§ 1056(d)(1), 1056(d)(3), 1104(a)(1), 1132(a)(3), 1132(e)(1), 1144(a).

26.    To the extent any requested relief affects Ms. Robinson's ability to enforce the Attorney's Fees Order or any similar order against the Plan, the Plan administrator, or the Plan fiduciaries, that relief is authorized by ERISA § 502(a)(3); 29 U.S.C. § 1132(a)(3) and falls within the Anti-Injunction Act's expressly authorized exception. *See AT&T*, 902 F. Supp. at 1173 (ERISA plan fiduciary "may bring an action for injunctive relief for violations of ERISA under section 1132(a)(3), and th[e] Court is not barred under the Anti-Injunction Act from granting such injunctive relief"); 28 U.S.C. § 2283; ERISA § 502(a)(3), (e)(1); 29 U.S.C. § 1132(a)(3), (e)(1).

### III.    PARTIES

27.    Plaintiff DLA Piper LLP (US) Profit Sharing and 401K Savings Plan is an employee pension benefit plan within the meaning of ERISA § 3(2); 29 U.S.C. § 1002(2), and an employee benefit plan within the meaning of ERISA § 3(3); 29 U.S.C. § 1002(3). The Plan is governed by ERISA and by written Plan documents.

28.    Plaintiff DLA Piper LLP (US) is the Plan administrator within the meaning of ERISA § 3(16), 29 U.S.C. § 1002(16), and is a fiduciary within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), with authority and responsibility to administer the Plan, including making determinations on whether domestic relations orders served on the Plan satisfy ERISA's QDRO requirements. The Plan

-8-
**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Committee is the administrator and fiduciary to current and former employees of DLA Piper LLP (US) (the "Firm") who are vested participants.

29.   Defendant Dana Davis Robinson is an individual, the spousal-party petitioner in the marital dissolution proceeding, *Dana Davis Robinson v. Scott K. Robinson*, case number D397678, pending in the Ventura County Superior Court, and the respondent in the Plan's appeal, *Dana Davis Robinson v. DLA Piper LLP (US) Profit Sharing and 401k Savings Plan*, case number B352366, pending in the California Court of Appeal, Second Appellate District. Ms. Robinson is the former spouse of Mr. Robinson.

30.   Plaintiffs are ignorant of the true names and capacities of Defendants sued as Does 1 through 25. Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe, and on that basis allege, that each Doe Defendant claims, asserts, or may seek to enforce rights under the Attorney's Fees Order or any similar order against the Plan or its fiduciaries.

31.   Mr. Robinson, who is not a party to this complaint, is a former Firm employee and is a participant in the Plan within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7), and the spousal-party respondent in the underlying marital dissolution proceeding, *Dana Davis Robinson v. Scott K. Robinson*, case number D397678, pending in the Ventura County Superior Court.

32.   Plaintiffs' claims for immediate declaratory and injunctive relief are ripe for adjudication as between Plaintiffs and Ms. Robinson, who obtained the challenged Attorney's Fees Order and is the adverse party expected to enforce it. Plaintiffs' claims for wrongful conduct, coercive relief, and fee-shifting are directed to Ms. Robinson and those acting in concert with her to enforce the challenged Attorney's Fees Order; not to Mr. Robinson.

///

///

-9-
**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

## IV.    FACTUAL ALLEGATIONS

**A.    The Plan and Its ERISA Obligations**

33.    The Plan is an ERISA-governed defined contribution retirement plan and an employee pension benefit plan within the meaning of ERISA § 3(2); 29 U.S.C. § 1002(2).

34.    ERISA requires the Plan to be administered in accordance with ERISA and the Plan's governing documents. ERISA § 404(a)(1)(D); 29 U.S.C. § 1104(a)(1)(D).

35.    ERISA requires Plan fiduciaries to act solely in the interests of Plan participants and beneficiaries, and for the exclusive purpose of providing benefits and defraying reasonable expenses of administering the Plan. ERISA § 404(a)(1)(A); 29 U.S.C. § 1104(a)(1)(A).

36.    ERISA requires Plan fiduciaries to administer the Plan with the care, skill, prudence, and diligence required by ERISA § 404(a)(1)(B); 29 U.S.C. § 1104(a)(1)(B).

37.    ERISA requires Plan fiduciaries to administer the Plan in accordance with the documents and instruments governing the Plan insofar as those documents and instruments are consistent with ERISA. ERISA § 404(a)(1)(D); 29 U.S.C. § 1104(a)(1)(D).

38.    ERISA's anti-alienation provision provides that each pension plan shall provide that benefits under the plan may not be assigned or alienated, except as expressly permitted by ERISA, including through ERISA's limited QDRO exception. ERISA §§ 206(d)(1), 206(d)(3); 29 U.S.C. §§ 1056(d)(1), 1056(d)(3).

39.    ERISA contains a limited exception for QDROs. ERISA § 206(d)(3); 29 U.S.C. § 1056(d)(3). A domestic relations order may require payment of Plan benefits to an alternate payee only if it satisfies ERISA's QDRO requirements. ERISA § 206(d)(3)(B)–(D); 29 U.S.C. § 1056(d)(3)(B)–(D). The Ninth Circuit has strictly enforced that limitation. *See Ablamis v. Roper*, 937 F.2d 1450 (9th Cir. 1991);

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

*Hamilton v. Wash. State Plumbing & Pipefitting Indus. Pension Plan*, 433 F.3d 1091 (9th Cir. 2006); *Branco*, 279 F.3d 1154. California courts likewise recognize that a domestic relations order attempting to transfer private retirement plan benefits is barred unless it satisfies ERISA's QDRO criteria, including *In re Marriage of Oddino*, 16 Cal. 4th 67 (1997), *In re Marriage of Shelstead*, 66 Cal. App. 4th 893 (1998), and *In re Marriage of Padgett*, 172 Cal. App. 4th 830 (2009).

40.    ERISA assigns responsibility for determining whether a domestic relations order is qualified to the Plan administrator. ERISA § 206(d)(3)(G)(i)–(ii); 29 U.S.C. § 1056(d)(3)(G)(i)–(ii).

41.    ERISA requires the Plan's fiduciaries to determine whether domestic relations orders served on the Plan satisfy ERISA and the Plan's written QDRO procedures. ERISA § 206(d)(3)(G)(i)–(ii); 29 U.S.C. § 1056(d)(3)(G)(i)–(ii).

42.    ERISA prohibits the Plan's fiduciaries from paying Plan benefits, or otherwise using Plan assets, in a manner inconsistent with ERISA, the Plan documents, or a valid QDRO. ERISA §§ 404(a)(1), 206(d)(1), 206(d)(3); 29 U.S.C. §§ 1104(a)(1), 1056(d)(1), 1056(d)(3).

**B.    The Robinson Dissolution Proceeding**

43.    Ms. Robinson alleged that she and Mr. Robinson were married on June 30, 1990, and separated on May 26, 2020.

44.    Ms. Robinson filed a petition for dissolution of marriage against Mr. Robinson on June 10, 2020, in Ventura County Superior Court, *Dana Davis Robinson v. Scott K. Robinson*, case number D397678. A true and accurate copy of the docket of the dissolution proceeding, which was obtained from the Ventura County Superior Court website on July 9, 2026, is attached hereto as Exhibit 1.

45.    Judgment in the dissolution proceeding was entered on July 1, 2021. *See* Ex. 1 at 8.

46.    The Plan was not a party to the dissolution proceeding. Ex. 1.

///

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

47.    The Plan has at all times been willing to comply with any valid QDRO that satisfies ERISA and the governing Plan documents.

**C.    The First Order and the Plan's Distribution to Ms. Robinson**

48.    On September 9, 2022, the Superior Court issued the First Order concerning Ms. Robinson's asserted community property interest in Mr. Robinson's Plan account. A true and accurate copy of the First Order is attached hereto as Exhibit 2.

49.    The Plan was served with the First Order; determined that it was a QDRO within the meaning of ERISA; and accepted the First Order as qualified.

50.    In full compliance with the First Order, the Plan distributed $49,975.05 to Ms. Robinson on or about April 11, 2023. This distribution satisfied Ms. Robinson's community property interest in Mr. Robinson's Plan account as provided in the First Order. A true and accurate copy of the Plan's check payment to Ms. Robinson is attached hereto as Exhibit 3.

**D.    The Second Order and the Plan's Response**

51.    On March 29, 2024, the Superior Court issued the Second Order relating to post-property settlement spousal or family support or support arrearage issues. A true and accurate copy of the Second Order is attached hereto as Exhibit 4.

52.    Ms. Robinson served the Second Order on the Plan on or about September 6, 2024.

53.    The Plan reviewed the Second Order under ERISA, the Plan documents, and the Plan's QDRO procedures, and accepted the Second Order as qualified.

54.    However, the Second Order did not direct the Plan to make an immediate distribution to Ms. Robinson regardless of whether Mr. Robinson's benefits were in pay status. The express terms of the Second Order required withholding and payment to Ms. Robinson only if benefits were in pay status or became payable within the time and circumstances specified in the Second Order.

///

-12-

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

55.    Section 1 of the Second Order provided for the withholding of periodic benefit payments only "[i]f Participant has **commenced receiving benefits** under the Plan in the form of monthly or other periodic payments or has **applied to receive** monthly or other periodic payments" (emphasis added). Ex. 4 at 1.

56.    Section 3 required the Plan to "[w]ithhold from any lump sum distributions **currently payable** to Participant under the Plan …" (emphasis added). *Id.* at 2.

57.    Section 5a stated: "[i]f Participant applies for benefits (including a lump sum distribution) within **90 days** after the Plan receives th[e] order or while the temporary restraining order in item 13 [of the order] remains in effect, the withholding provisions of th[e] order must take effect once such benefits become payable" (emphasis added). *Id.* at 3.

58.    The Superior Court did not issue any temporary restraining order in connection with the Second Order at any time. *See* Ex. 1.

59.    Section 5b stated: "[i]f Participant has not commenced receiving benefits under the Plan (other than by reason of the temporary restraining order in item 13), and does not apply to receive benefits by the end of the [90-day period], **the Plan has no obligation under th[e] order to withhold payments from Participant's benefits**, provided the Plan sends prompt written notice to Alternate Payee(s) stating that no benefits are currently available for distribution under th[e] order and specifying the earliest date on which Participant could begin receiving benefits under the Plan if Participant terminated employment" (emphasis added). Ex. 4 at 3.

60.    At the time the Plan received the Second Order, Mr. Robinson: (i) was no longer employed by the Firm; (ii) was not receiving any distribution of benefits from the Plan; (iii) had not requested any distribution from the Plan; and (iv) did not request or receive any distribution of Plan benefits within 90 days after the Plan received the Second Order.

///

-13-
**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

61.    Because Mr. Robinson's benefits were not in pay status and because he had not requested a distribution within 90 days of the Plan's receipt of the Second Order, no amount was currently payable to Mr. Robinson from which the Plan could withhold and pay funds to Ms. Robinson under the Second Order.

62.    In October or November 2024, the Plan's counsel had a telephone conversation with Ms. Robinson's counsel of record, Ira Friedman, to notify him and explain that the Plan had accepted the Second Order as qualified but could not make any distribution under the Second Order because Mr. Robinson's Plan account was not in pay status and no distribution had been requested.

63.    In compliance with the Second Order, the Plan notified Ms. Robinson, through her counsel Mr. Friedman, of the same on November 19, 2024. A true and accurate copy of the Plan's November 19, 2024 letter is attached hereto as Exhibit 5. The Plan's letter to Ms. Robinson/her counsel specifically stated that although the Plan accepted the Second Order as qualified, no distribution could be made to Petitioner under the express terms of the Second Order because:

> [Mr. Robinson] is not currently getting a distribution of his benefit from the plan, and he has not requested a distribution from the plan in a lump sum or otherwise. Since he has terminated service with the firm, he could request a distribution at any time.

Ex. 5 at 1.

64.    The Plan complied with the Second Order, but Ms. Robinson was not entitled to any distribution of benefits from Mr. Robinson's Plan account under its terms because Mr. Robinson did not commence receiving benefits and did not apply to receive benefits within the applicable 90-day period.

**E.    Ms. Robinson's Joinder of the Plan**

65.    Despite the Plan's compliance with the Second Order, and despite the Plan's notice that no distribution could be made under the Second Order because Mr. Robinson's benefits were not in pay status and he had not requested a distribution,

Ms. Robinson filed a joinder of the Plan in the Superior Court dissolution proceeding on December 19, 2024. A true and accurate copy of the summons (joinder), pleading on joinder – employee plan, and request for joinder of employee benefit plan and order that Ms. Robinson filed on December 19, 2024, is attached hereto as Exhibit 6.

66. Ms. Robinson's joinder papers identified "DLA Piper LLP US Profit Sharing & 401(K) Savings Plan c/o Principal Life Insurance Company" as the party claimant. *See* Ex. 6.

67. The joinder papers neither identified nor joined the Plan's administrator or fiduciaries, the Plan Committee, the Firm, or Principal Life Insurance Company separately as an independent claimant or party against whom affirmative monetary relief could be awarded. *Id*. The Plan's administrator and fiduciaries, the Plan Committee, the Firm, or Principal Life Insurance Company did not become subject to the Superior Court's personal jurisdiction merely because the Plan was joined.

68. The joinder sought relief concerning Mr. Robinson's employee benefit plan, including orders restraining the Plan from making benefit payments to Mr. Robinson pending determination of Ms. Robinson's asserted interest, directing the Plan to notify Ms. Robinson when benefits first became payable to Mr. Robinson, and directing the Plan to make payment to Ms. Robinson of her interest in Mr. Robinson's benefits when they became payable. *Id*. The joinder did not provide notice that Ms. Robinson would seek, or that the Superior Court could enter, a personal monetary award against the Plan administrator or any non-party fiduciary.

69. In February 2025, in a further effort to resolve the matter and avoid litigation, the Plan's counsel again spoke with Ms. Robinson's counsel Mr. Friedman to reiterate that the Plan had accepted and qualified the Second Order but that no distribution could be made because Mr. Robinson's Plan account was not in pay status.

70. The Plan moved to dismiss the joinder on March 11, 2025, asserting that the relief requested was inconsistent with the Second Order, the Plan documents, and

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

ERISA, and would require the Plan's fiduciaries to violate their fiduciary duties under ERISA. Ms. Robinson opposed the Plan's motion.

71.    On September 24, 2025, the Superior Court denied the Plan's motion to dismiss the joinder.

72.    As its request to be dismissed was denied, the Plan filed a notice of appearance and response of employee benefit plan on October 10, 2025. A true and accurate copy of the Plan's notice and response is attached hereto as Exhibit 7.

**F.    Ms. Robinson's Subpoena to the Plan**

73.    On or about June 4, 2025, Ms. Robinson subpoenaed the Plan for records relating to Mr. Robinson's Plan account.

74.    The Plan served its response on June 23, 2025. The records the Plan produced confirmed that Mr. Robinson (i) had not requested any distribution of benefits from the Plan and (ii) had not received any distribution of benefits from the Plan.

**G.    Ms. Robinson's Demand and Improper Contact with Plan Employees**

75.    On or about September 30, 2025, Ms. Robinson, through her counsel Kiyoshi H. Graves, another attorney in Mr. Friedman's law firm, sent a demand letter seeking payment from the Plan under the Second Order. The Plan's counsel acknowledged receipt of the demand and indicated that the Plan would "respond in due course." A true and accurate copy of the Plan's attorney's communications with Ms. Robinson's attorney between September 30, 2025 and October 3, 2025, including Ms. Robinson's demand, is attached hereto as Exhibit 8.

76.    Despite being notified that the Plan would respond and despite his knowledge that the Plan is represented by counsel, Mr. Graves knowingly and improperly contacted the Plan's administrative employees directly on October 3, 2025, in violation of California Rule of Professional Conduct 4.2. Mr. Graves also threatened the Plan's employees that he intended to contact the Firm's offices in other states, which had no connection with this matter. The Plan's attorneys immediately

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

reminded Ms. Robinson's counsel of their ethical obligation to direct all their communications regarding the Plan through its attorneys of record. A true and accurate copy of the Plan's attorney's communications with Mr. Graves on October 3, 2025, regarding his direct communications with Plan employees is attached hereto as Exhibit 9.

77. The Plan responded substantively to Ms. Robinson's demand on October 10, 2025, and reiterated that Ms. Robinson had no present right to payment under the Second Order because Mr. Robinson had not requested and was not receiving any distribution of Plan benefits. A true and accurate copy of the Plan's response is attached hereto as Exhibit 10.

**H.    Ms. Robinson's Request to Enforce the Second Order**

78. On November 13, 2025, Ms. Robinson filed a request for order requiring the Plan to pay $29,026.30, plus interest, under the Second Order. The Plan opposed Ms. Robinson's request on or about December 23, 2025. Ms. Robinson filed or served a reply on or about January 2, 2026.

79. The Superior Court heard the request on or about January 7, 2026.

80. On February 3, 2026, the Superior Court granted Ms. Robinson's request. A true and accurate copy of the Superior Court's order is attached hereto as Exhibit 11. Specifically, even though Mr. Robinson was not in pay status as required under the express terms of the Second Order, the Superior Court nevertheless ordered the Plan to pay Ms. Robinson $29,376.71, plus interest. The Superior Court's ruling totally ignored the express terms of the Second Order, and effectively rewrote it to compel a distribution that the order on its face did not authorize.

**I.    The Plan Appeals the Superior Court's February 2026 Order**

81. The Plan appealed the Superior Court's February 3, 2026 order to the California Court of Appeal and filed its notice of appeal on February 13, 2026. The appeal, which is captioned *Dana Davis Robinson v. DLA Piper LLP (US) Profit Sharing and 401k Savings Plan*, case number B352366, remains pending in the

California Court of Appeal, Second Appellate District, Division Six. A true and accurate copy of the docket of the appeal, which was obtained from the California Court of Appeal's website on July 9, 2026, is attached hereto as Exhibit 12.

82.    Mr. Friedman appeared in the appeal on Ms. Robinson's behalf and filed a motion to dismiss on April 3, 2026. *See* Ex. 12 at 2. The Plan filed its opposition to the motion on April 20, 2026. *Id*.

83.    The California Court of Appeal issued an order on May 6, 2026 deferring Ms. Robinson's motion to dismiss "pending completion of th[e] appeal." A true and accurate copy of the California Court of Appeal's order is attached hereto as Exhibit 13.

84.    The Plan filed its appellant's opening brief and appellant's appendices on May 6, 2026. *See* Ex. 12 at 3. The Plan asserted in its opening brief that the Superior Court's February 3, 2026 order conflicts with the Second Order, ERISA, and the Plan documents because Mr. Robinson's benefits were not in pay status and no distribution of benefits had been requested. The Plan also asserted that the February 3, 2026 order is not a valid QDRO because it requires the Plan to pay benefits in a manner not authorized by ERISA or the Plan documents.

85.    On May 22, 2026, Ms. Robinson filed a substitution of attorney, which substituted Mr. Friedman's law firm out as her attorneys of record in the appeal. *Id*.

86.    On June 17, 2026, Ms. Robinson, as a *pro se* litigant in the appeal, filed a request for an extension to July 31, 2026, to file her respondent's brief, which the California Court of Appeal granted. *Id*.

**J.    Ms. Robinson's Request for Attorney's Fees At Issue**

87.    On or about March 10, 2026, the Plan applied *ex parte* to fix the amount of bond on appeal. *See* Ex. 1 at 18. The Superior Court declined to grant *ex parte* relief and set the matter for hearing on April 1, 2026. *Id*. at 19.

88.    At the April 1, 2026 hearing, the Superior Court stated that it would take the Plan's application under submission and mentioned that there was another hearing

-18-
**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

in the dissolution case set for April 29, 2026.

89.    The Plan's attorneys notified the Court that they were not previously aware of any future hearings and that they had not received service of Ms. Robinson's papers in connection with those hearings.

90.    Unbeknownst to the Plan, Ms. Robinson filed a request for order seeking attorney's fees and costs from the Plan on March 13, 2026, which she failed to serve on the Plan or its attorneys. *Id*. at 18.

91.    After the April 1, 2026, hearing, the Plan's attorneys reached out to Ms. Robinson's attorneys Mr. Friedman and Mr. Graves that same day, and requested that they "please promptly serve petitioner's papers" and that "the hearings be continued to allow the Plan the requisite statutory time to oppose petitioner's requests/motions." Neither Mr. Friedman nor Mr. Graves responded, and the Plan's attorneys sent a follow-up email on April 7, 2026. A true and accurate copy of the Plan's attorney's communications with Ms. Robinson's attorneys on April 1 and 7, 2026, is attached hereto as Exhibit 14.

92.    Only on April 8, 2026, did Ms. Robinson's attorneys finally serve—for the first time—her request for order for attorney's fees against the Plan. A true and accurate copy of Ms. Robinson's attorneys' service email of the request is attached hereto as Exhibit 15.

93.    Given that Ms. Robinson's request was set for hearing on April 29, 2026, her attorneys' email service on April 8, 2026 was untimely under California Code of Civil Procedure section 1005(b), which required that Ms. Robinson serve her moving papers "at least 16 court days before the hearing," and section 1010.6(a)(3)(B), which required that Ms. Robinson add two additional court days for email service.

94.    Ms. Robinson sought $50,000 in attorney's fees from the Plan under California Family Code section 2030. A true and accurate copy of Ms. Robinson's request (excluding the exhibits thereto) is attached hereto as Exhibit 16.

///

-19-
**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

95. Ms. Robinson asserted that she needed the fees to defend against the Plan's pending appeal and for fees incurred as a result of the Plan's filings. Ms. Robinson's stated reasons for seeking fees were directed exclusively to the Plan's and the Plan administrator's ERISA-related conduct: the Plan's position that compliance would violate ERISA, the Plan documents, and fiduciary duties; the Plan's motion to dismiss the joinder on ERISA grounds; the Plan's opposition to her enforcement request; and the Plan's appeal of the February 3, 2026 order. *See* Ex. 16. Ms. Robinson's request for attorney's fees arose solely from the Plan administrator's performance of Plan-related administrative functions and fiduciary duties, including acting solely in the interests of Plan participants, ensuring that the Plan is administered in accordance with its governing documents in connection with Ms. Robinson's attempt to obtain an impermissible distribution from the Plan.

96. Ms. Robinson's request was also based on her counsel Mr. Friedman's representation in a declaration submitted to the Superior Court that his firm "does not currently handle appellate matters" and that Ms. Robinson therefore required $50,000 to "retain competent appellate counsel." *Id*. at 21.

97. Mr. Friedman's sworn representation was false or materially misleading. Court records show that Friedman & Friedman and/or Ira M. Friedman have appeared as counsel of record in multiple appellate matters. More significantly, Ms. Robinson later admitted in an email to the Plan's attorneys, after the Superior Court issued the Attorney's Fees Order, that she and Mr. Friedman never intended to retain separate appellate counsel and that it was always their plan—despite their representations to the Superior Court—for Mr. Friedman to represent her in the appeal. Specifically, Ms. Robinson admitted: "it was always the intention that Mr. Friedman would be substituting his firm back in [the appeal] to represent [her] if and when [they] were awarded attorney fees." A true and accurate copy of Ms. Robinson's email is attached hereto as Exhibit 17.

///

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

98.   Ms. Robinson's reliance on Mr. Friedman's inaccurate assertion further demonstrates that the attorney's fee request was unsupported, overstated, and calculated to improperly shift to the Plan expenses that are impermissible against an ERISA plan or its fiduciaries.

99.   Despite the untimely service of Ms. Robinson's request, the Plan timely filed and served its opposition on April 16, 2026. A true and accurate copy of the Plan's opposition (excluding its exhibits) is attached hereto as Exhibit 18.

100.   The Plan asserted that: (i) the requested order for attorney's fees would not qualify as a QDRO; (ii) a state-court order requiring the Plan or its fiduciaries to pay attorney's fees to Ms. Robinson based on the Plan's ERISA-based administration of domestic relations orders would be preempted by ERISA; (iii) compliance with such an order would violate ERISA's anti-alienation provision and would require the Plan's fiduciaries to violate their ERISA fiduciary duties; and (iv) ERISA barred any state-court award for attorney's fees against the Plan. *See* Ex. 18.

101.   The Plan's position was supported by the reasoning of *AT&T*, 902 F. Supp. at 1175–78, which held that a California family law court attorney's fee order against an ERISA plan was preempted by ERISA, violated the anti-alienation provision because it was not a QDRO, and required the plan's fiduciaries to violate ERISA fiduciary duties.

102.   The Plan also argued that Ms. Robinson's request was procedurally defective because it had not been timely served and that she failed to satisfy the requirements for such fees under California Family Code section 2030. *See* Ex. 18.

103.   By their untimely service of the moving papers and failure to respond to the Plan's attorney's reasonable requests for copies, Ms. Robinson and her attorneys knowingly forced the Plan to incur unnecessary attorney's fees to investigate unserved filings, request copies and proper service, seek adequate time to respond, and prepare an opposition on shortened and unfair notice; those fees were incurred to protect ERISA-governed Plan administration and are recoverable under ERISA § 502(g)(1);

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

29 U.S.C. § 1132(g)(1).

104. Ms. Robinson filed her reply brief on April 22, 2026. *See* Ex. 1 at 20. A true and accurate copy of Ms. Robinson's reply is attached hereto as Exhibit 19.

105. On April 28, 2026, one day before the April 29, 2026 hearing on Ms. Robinson's attorney's fee request, Ms. Robinson untimely filed and served an unauthorized sur reply styled as a request to strike the Plan's opposition to her request for attorney's fees. *See* Ex. 1 at 20. A true and accurate copy of Ms. Robinson's sur reply is attached hereto as Exhibit 20.

106. Ms. Robinson's sur reply attempted to prevent the Superior Court from considering the Plan's opposition by arguing that it should be stricken or disregarded because the Plan did not file an income and expense declaration. *See* Ex. 20.

107. Ms. Robinson's sur reply was improper and filed in bad faith. It was served after Ms. Robinson had already delayed service of her moving papers and on the eve of the hearing when the Plan had no fair opportunity to respond. The Plan was prejudiced and was deprived of any opportunity, much less a meaningful opportunity, to respond to the new arguments, prepare counterarguments, or submit evidence addressing the issues raised in the sur reply.

108. Ms. Robinson's sur reply further confirms that her attorney's fee request arose solely from the Plan's ERISA-governed conduct. In her filing, Ms. Robinson argued that the requested fees were to "to fund her defense against the appeal the Plan itself filed." Ex. 20 at 2. The sur reply thus targeted the Plan's and Plan administrator's litigation conduct undertaken to discharge and protect their ERISA fiduciary obligations.

109. The Superior Court heard Ms. Robinson's request for attorney's fees on April 29, 2026. Ex. 1 at 20.

///

///

///

-22-
**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**K.　The Superior Court's Attorney's Fees Order Is Impermissible Under ERISA's Preemption Provision**

110.　On June 22, 2026, the Superior Court issued the Attorney's Fees Order, granting Ms. Robinson's request for $50,000 in attorney's fees against the Plan. A true and accurate copy of the Attorney's Fees Order is attached hereto as Exhibit 21.

111.　ERISA preserves only a narrow role for state domestic-relations orders affecting pension benefits: such orders may avoid ERISA preemption only to the extent they satisfy ERISA's requirements for a QDRO. ERISA §§ 206(d)(3), 514(b)(7); 29 U.S.C. §§ 1056(d)(3), 1144(b)(7).

112.　The Attorney's Fees Order is neither a QDRO nor an order that purports to be a QDRO.

113.　The Attorney's Fees Order does not satisfy ERISA's QDRO requirements. It does not state a permissible assignment of benefits payable with respect to Mr. Robinson, does not operate within the Plan's distribution rules, does not identify benefits currently payable, and does not satisfy the statutory limits that prohibit an order from requiring a plan to provide a type or form of benefit or option not otherwise available under the plan. ERISA § 206(d)(3)(B)–(D); 29 U.S.C. § 1056(d)(3)(B)–(D).

114.　The Attorney's Fees Order does not require payment of benefits payable to Mr. Robinson in accordance with a qualified domestic relations order. ERISA § 206(d)(3)(A), (B); 29 U.S.C. § 1056(d)(3)(A), (B).

115.　The Attorney's Fees Order does not identify any benefits currently payable to Mr. Robinson. ERISA § 206(d)(3)(C)(ii)–(iv); 29 U.S.C. § 1056(d)(3)(C)(ii)–(iv).

116.　The Attorney's Fees Order instead imposes a direct monetary liability on the Plan because the Plan was required to exercise its ERISA fiduciary duties to defend and protect Mr. Robinson's vested pension benefits in the proceeding and on appeal. The Attorney's Fees Order, therefore, burdens and imposes liability on the

-23-
**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plan for doing what ERISA required: protecting Plan assets and participants by preventing the distribution of benefits in a manner not authorized by the Plan documents, the Second Order, or ERISA. ERISA §§ 404(a)(1)(A), 404(a)(1)(D), 206(d)(1), 206(d)(3); 29 U.S.C. §§ 1104(a)(1)(A), 1104(a)(1)(D), 1056(d)(1), 1056(d)(3).

117. The Attorney's Fees Order, therefore, is barred under ERISA because it is not a QDRO and therefore does not fall within ERISA's limited exception to the anti-alienation provision. ERISA §§ 206(d)(1), 206(d)(3); 29 U.S.C. §§ 1056(d)(1), 1056(d)(3). The Superior Court was without jurisdiction or authority to issue an order against an ERISA plan, the Plan administrator, or any Plan fiduciary that would require payment outside a valid QDRO, interfere with the Plan administrator's QDRO determination and fiduciary functions, or compel conduct contrary to ERISA and the Plan documents. ERISA §§ 404(a)(1), 502(a)(3), 514(a); 29 U.S.C. §§ 1104(a)(1), 1132(a)(3), 1144(a); *AT&T*, 902 F. Supp. at 1175–78.

118. Despite the fact that neither the Plan Committee nor the Firm was even a party, the Superior Court concluded that its order does not violate ERISA because the fees are being sought "from DLA Piper and the Administrator, not the individual 401K plan for the benefit of [Mr. Robinson]." Ex. 21 at 2. The Superior Court also erroneously held that it had authority to order the Plan to pay attorney's fees as authorized by statute. *Id*.

119. The Superior Court's Attorney's Fees Order is without any factual or legal support and, thus, is invalid under ERISA for three reasons:

    a.    First, ERISA preemption is not avoided by labeling the order as one against the Plan or administrator rather than against a participant's individual account; the order directly arises from and relates to an ERISA plan and the Plan and its administrator's actions in administering an ERISA plan; and the order imposes liability on the Plan and its administrator for simply performing their fiduciary duties as required to protect Plan assets and

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

participants from improper claims against their vested pension benefits. ERISA §§ 404(a)(1), 514(a); 29 U.S.C. §§ 1104(a)(1), 1144(a).

b. Second, the Plan administrator was not joined as a party in the dissolution proceeding, and the Plan has no assets separate from the Plan accounts of the current and former Firm employees who are participants. Thus, any payment required by the Attorney's Fees Order would require an impermissible distribution of ERISA-protected Plan assets—not from the non-party Plan administrator, as the Superior Court incorrectly determined, in violation of ERISA's anti-alienation provision. ERISA §§ 206(d)(1), 206(d)(3); 29 U.S.C. §§ 1056(d)(1), 1056(d)(3).

c. Third, California Family Code section 2030(d) does not displace ERISA's exclusive federal limitations on plan administration. Cal. Fam. Code § 2030(d); ERISA §§ 206(d), 404(a), 514(a); 29 U.S.C. §§ 1056(d), 1104(a), 1144(a). That conclusion conflicts with ERISA's express preemption provision and with the governing state and federal authorities recognizing that state domestic-relations authority must yield when an order would compel an ERISA plan to act outside a valid QDRO or contrary to ERISA. ERISA §§ 206(d)(1), 206(d)(3), 404(a)(1), 514(a); 29 U.S.C. §§ 1056(d)(1), 1056(d)(3), 1104(a)(1), 1144(a).

120. In addition to exceeding its limited jurisdiction under ERISA to determine whether a domestic relations order is a QDRO, the Superior Court has consistently overlooked and effectively condoned Ms. Robinson's attorneys' bad-faith tactics.

121. The Superior Court completely disregarded and failed to address that Ms. Robinson filed her request for attorney's fees without first or concurrently serving the Plan's attorneys; that Ms. Robinson then delayed serving her moving papers despite the Plan's attorneys' repeated requests to be served; that Ms. Robinson's papers were untimely served; and that the Plan was prejudiced. *See* Ex. 21. The Superior Court

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

also adopted arguments from Ms. Robinson's untimely sur reply that the Plan had no chance to prepare a response to. The Attorney's Fees Order stated that "DLA Piper did not file any financial information including an Income and Expense Declaration" and that "DLA Piper did not argue that it does not have the ability to contribute towards [Ms. Robinson's] fees." *Id*. at 1. Those arguments were raised for the first time in Ms. Robinson's untimely sur reply. *See* Ex. 20.

**L.     Ms. Robinson Is Pursuing Enforcement of the Attorney's Fees Order**

122.   Ms. Robinson has sought to enforce the Attorney's Fees Order against the Plan and its administrator. Her counsel Mr. Friedman sent a demand on June 25, 2026, just three days after the Court issued the Attorney's Fees Order. A true and accurate copy of Ms. Robinson's counsel's demand is attached hereto as Exhibit 22.

123.   A week later on July 2, 2026, Ms. Robinson herself directly initiated contact with the Plan's attorneys, as she was purportedly a *pro se* litigant in the appeal, and emailed them to request that they respond to Mr. Friedman's demand letter. *See* Ex. 17.

124.   Ms. Robinson admitted in her email that she and Mr. Friedman intentionally misled the Superior Court; their representations that Mr. Friedman's law firm does not handle appeals and they planned to retain separate appellate counsel were false; and "it was always the[ir] intention that Mr. Friedman would be substituting his firm back in [the appeal] to represent [her] if and when [they] were awarded attorney fees." *Id*.

125.   Unless restrained by this Court, Ms. Robinson and those acting in concert with her will continue initiating proceedings to enforce the Attorney's Fees Order or similar orders against the Plan or its fiduciaries.

126.   Enforcement of the Attorney's Fees Order would cause Plaintiffs irreparable harm by requiring the Plan and its fiduciaries to violate ERISA, the Plan documents, and their fiduciary duties.

///

-26-

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

127. Plaintiffs have no adequate remedy at law because payment under the Attorney's Fees Order would require an immediate violation of ERISA and would undermine the Plan's federally protected administration of benefits and QDRO determinations.

128. An actual, present, and justiciable controversy exists between Plaintiffs and Ms. Robinson regarding whether the Attorney's Fees Order is preempted by ERISA, violates ERISA and the Plan documents, and is invalid and unenforceable against the Plan and its fiduciaries.

129. A declaration from this Court will resolve the controversy and clarify the parties' rights and obligations.

130. Injunctive relief is necessary to prevent irreparable injury to the Plan, its participants and beneficiaries, and its fiduciaries.

131. Ms. Robinson's June 25, 2026 demand and any further attempts to collect, execute on, or otherwise enforce the Attorney's Fees Order against the Plan, the Plan administrator, the Plan fiduciaries, the Firm, or Principal Life Insurance Company constitute acts or threatened acts that Plaintiffs contend violate ERISA and the Plan documents. Plaintiffs seek relief from those acts and threatened acts under ERISA § 502(a)(3). *See* ERISA §§ 206(d)(1), 206(d)(3), 404(a)(1), 502(a)(3), 514(a); 29 U.S.C. §§ 1056(d)(1), 1056(d)(3), 1104(a)(1), 1132(a)(3), 1144(a). Plaintiffs do not seek any order altering the marital status, property rights, support obligations, or other domestic-relations rights of Ms. Robinson or Mr. Robinson as between themselves.

132. Plaintiffs do not seek to enjoin the Superior Court from adjudicating the dissolution proceeding generally, and Plaintiffs do not seek to prevent Ms. Robinson from seeking relief against Mr. Robinson personally.

133. Plaintiffs seek only to prevent enforcement against the Plan, the Plan administrator, the Plan fiduciaries, the Plan Committee, the Firm, and Principal Life Insurance Company of the Attorney's Fees Order or any similar order to the extent

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

enforcement would require conduct prohibited by ERISA, including the use or exposure of ERISA-governed Plan assets for a purpose not authorized by ERISA, the Plan documents, or a valid QDRO. *See* ERISA §§ 206(d)(1), 206(d)(3), 404(a)(1)(A), 404(a)(1)(D), 502(a)(3), 514(a); 29 U.S.C. §§ 1056(d)(1), 1056(d)(3), 1104(a)(1)(A), 1104(a)(1)(D), 1132(a)(3), 1144(a).

134. Plaintiffs have independent fiduciary duties under ERISA that are separate from the interests of any spousal party in the dissolution proceeding. Those duties include the duties to administer the Plan in accordance with ERISA and the Plan documents, to act solely in the interests of participants and beneficiaries, to defray only reasonable administrative expenses, and to avoid payments or uses of Plan assets not authorized by ERISA, the Plan documents, or a valid QDRO. *See* ERISA § 404(a)(1)(A), (B), (D); 29 U.S.C. § 1104(a)(1)(A), (B), (D).

135. Plaintiffs' federal claims are based on those independent ERISA duties and on ERISA's federal limitations on state domestic-relations orders affecting ERISA plans. Plaintiffs do not seek relief merely because the Superior Court allegedly committed legal error; rather, Plaintiffs seek to prevent Ms. Robinson from using the Attorney's Fees Order or any similar order to compel Plaintiffs to violate ERISA.

## FIRST CLAIM FOR RELIEF

### Declaratory Relief Under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), and 28 U.S.C. §§ 2201 and 2202

### (Against all Defendants)

136. Plaintiffs reallege and incorporate by reference paragraphs 1 through 135 as though fully set forth herein. This claim is asserted against Ms. Robinson and against any person acting in concert with her to enforce the Attorney's Fees Order.

137. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a fiduciary to bring a civil action to enjoin any act or practice that violates ERISA or the terms of the Plan, or to obtain other appropriate equitable relief to redress such violations or enforce ERISA or the terms of the Plan. The Declaratory Judgment Act likewise

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

authorizes this Court to declare the parties' rights and legal relations in an actual controversy and to grant further necessary or proper relief. 28 U.S.C. §§ 2201–2202.

138. An actual, present, and justiciable controversy exists because Ms. Robinson obtained the Attorney's Fees Order, claims the benefit of that order, has demanded that the Plan and its administrator comply with it, and is expected to contend that the order is valid and enforceable.

139. The controversy presented by this claim is an independent federal ERISA controversy concerning Plaintiffs' rights and obligations under ERISA and the Plan documents. Plaintiffs seek a declaration of their federal duties and of Ms. Robinson's inability to enforce the Attorney's Fees Order or any similar order against the Plan, the Plan administrator, the Plan fiduciaries, the Plan Committee, the Firm, or Principal Life Insurance Company where enforcement would violate ERISA. Plaintiffs do not seek appellate review of the Superior Court's reasoning, a reversal of the Superior Court's judgment as between the spousal parties, or relief that would disturb ordinary domestic-relations proceedings between Ms. Robinson and Mr. Robinson. *See* ERISA §§ 404(a)(1), 502(a)(3), 502(e)(1), 514(a); 29 U.S.C. §§ 1104(a)(1), 1132(a)(3), 1132(e)(1), 1144(a).

140. Plaintiffs contend that the Attorney's Fees Order is invalid and unenforceable for three independent reasons.

141. First, the Attorney's Fees Order is preempted by ERISA because it is a state-court order having the effect of law that relates to an ERISA-governed employee benefit plan: it expressly names the Plan, imposes a monetary obligation on the Plan, arises from the Plan's and its administrator's administration of domestic relations orders concerning Plan benefits, and imposes liability because the Plan and its administrator performed their ERISA-governed fiduciary functions. ERISA § 514(a); 29 U.S.C. § 1144(a).

142. Second, the Attorney's Fees Order violates ERISA's anti-alienation and QDRO provisions because it requires payment from or on account of the Plan, Plan

-29-
**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

assets, or Plan administration, but it is not a QDRO and does not satisfy ERISA's QDRO requirements. ERISA §§ 206(d)(1), 206(d)(3), 404(a)(1); 29 U.S.C. §§ 1056(d)(1), 1056(d)(3), 1104(a)(1).

143. Third, the Attorney's Fees Order would require the Plan and its administrator to violate ERISA fiduciary duties because compliance would require fiduciaries to use or expose Plan assets for a purpose not authorized by ERISA or the Plan documents, would not be for the exclusive purpose of providing benefits to participants and beneficiaries or defraying reasonable administrative expenses, and would penalize the Plan and its administrator for protecting Plan assets and participants from claims not authorized by ERISA, the Plan documents, or a valid QDRO. ERISA § 404(a)(1); 29 U.S.C. § 1104(a)(1).

144. The Attorney's Fees Order is also void or unenforceable under ERISA because the Plan administrator was not joined as a party to the dissolution proceeding and because the Plan has no assets separate from the Plan accounts of Mr. Robinson and other current and former Firm employees. Thus, any payment required by the Attorney's Fees Order would necessarily come from ERISA-protected Plan assets— whether from Mr. Robinson's account or from assets held for other participants—in violation of ERISA's anti-alienation provision. ERISA §§ 206(d)(1), 206(d)(3); 29 U.S.C. §§ 1056(d)(1), 1056(d)(3).

145. The Superior Court's reliance on California Family Code section 2030(d) cannot expand the Superior Court's jurisdiction beyond ERISA's limits, cannot override ERISA preemption, and cannot authorize an order requiring the Plan or its fiduciaries to violate ERISA or the Plan documents. Cal. Fam. Code § 2030(d); ERISA §§ 206(d)(1), 206(d)(3), 404(a)(1), 514(a); 29 U.S.C. §§ 1056(d)(1), 1056(d)(3), 1104(a)(1), 1144(a).

146. Plaintiffs' position is supported by *AT&T*, which held that a California family law court attorney's fee order against an ERISA plan was preempted by ERISA, violated ERISA's anti-alienation provision because it was not a QDRO, and

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

impermissibly required plan fiduciaries to violate ERISA fiduciary duties. *AT&T*, 902 F. Supp. at 1175–78.

147. Declaratory relief will clarify the parties' legal relations and resolve whether Ms. Robinson may enforce the Attorney's Fees Order or any similar order against the Plan, its administrator, or its fiduciaries.

148. Plaintiffs are entitled to declarations that: (a) the Attorney's Fees Order is preempted by ERISA; (b) the Attorney's Fees Order violates ERISA and the Plan documents because it is not a QDRO and requires a prohibited assignment, alienation, or use of Plan assets or Plan administration; (c) the Attorney's Fees Order requires the Plan's fiduciaries to violate ERISA fiduciary duties; (d) the Attorney's Fees Order is void or unenforceable under ERISA because any payment required by the Attorney's Fees Order would necessarily come from ERISA-protected Plan assets given that the Plan administrator was not joined as a party to the dissolution proceeding and that the Plan has no assets separate from the Plan accounts of Mr. Robinson and other current and former Firm employees; and (e) any similar order based on the Plan's ERISA-governed administration of domestic relations orders concerning Mr. Robinson's Plan benefits is preempted, invalid, and unenforceable against the Plan, the Plan's administrator, the Plan's fiduciaries, the Plan Committee, the Firm, and/or Principal Life Insurance Company.

## SECOND CLAIM FOR RELIEF

### Injunctive Relief Under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3)

### (Against all Defendants)

149. Plaintiffs reallege and incorporate by reference paragraphs 1 through 148 as though fully set forth herein. This claim is asserted against Ms. Robinson and against any person acting in concert with her to enforce the Attorney's Fees Order or any similar order.

150. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a fiduciary to bring a civil action to enjoin any act or practice that violates ERISA or the terms of

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

the Plan, or to obtain other appropriate equitable relief to redress such violations or enforce ERISA or the terms of the Plan. ERISA also gives federal district courts exclusive jurisdiction over actions brought by fiduciaries under ERISA § 502(a)(3). ERISA § 502(e)(1); 29 U.S.C. § 1132(e)(1).

151. Plaintiffs seek narrowly tailored injunctive relief preventing Ms. Robinson, her attorneys, agents, representatives, successors, employees, and all persons acting in concert with her from enforcing or attempting to enforce the Attorney's Fees Order, or any similar order, against the Plan, the Plan's administrators, Plan fiduciaries, the Plan Committee, the Firm, and Principal Life Insurance Company.

152. The requested injunction is prospective and conduct-directed. It would operate only against Ms. Robinson and those acting in concert with her, and only to prevent enforcement or attempted enforcement against the Plan, the Plan administrator, the Plan fiduciaries, the Plan Committee, the Firm, or Principal Life Insurance Company in violation of ERISA and the Plan documents. The requested injunction would not vacate the Attorney's Fees Order, would not require the Superior Court to take or refrain from taking any action in the dissolution proceeding generally, and would not adjudicate any claim by Ms. Robinson against Mr. Robinson personally. *See* ERISA § 502(a)(3); 29 U.S.C. § 1132(a)(3); 28 U.S.C. § 2283; *Mitchum*, 407 U.S. at 237–43.

153. Plaintiffs are likely to succeed on the merits because the Attorney's Fees Order is preempted by ERISA, violates ERISA's anti-alienation provision, is not a QDRO, conflicts with the Plan documents, and requires the Plan's fiduciaries to violate ERISA fiduciary duties. ERISA §§ 206(d)(1), 206(d)(3), 404(a)(1), 514(a); 29 U.S.C. §§ 1056(d)(1), 1056(d)(3), 1104(a)(1), 1144(a); *AT&T*, 902 F. Supp. at 1175–78.

154. Plaintiffs will suffer irreparable harm absent injunctive relief because enforcement of the Attorney's Fees Order would require the Plan, its administrator,

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

and/or its fiduciaries to violate ERISA, the Plan documents, and their fiduciary duties; would impair the Plan administrator's federally protected authority to determine QDRO status and administer domestic relations orders; and would expose Plaintiffs to conflicting obligations under state and federal law.

155. Plaintiffs have no adequate remedy at law because money damages after enforcement would not cure the violation of ERISA, restore the Plan's federally protected fiduciary administration, or prevent further attempts to enforce the Attorney's Fees Order or similar orders against the Plan, its administrator, or its fiduciaries.

156. The balance of hardships favors Plaintiffs because an injunction would preserve ERISA's federally mandated administration of Plan benefits and QDRO determinations, while Ms. Robinson has no legitimate interest in enforcing a state-court order that is preempted by ERISA, is not a QDRO, and is contrary to ERISA and the Plan documents. The balance of hardships also favors Plaintiffs because Ms. Robinson's and her counsel's conduct, including delayed service, improper direct communications with represented Plan personnel, and untimely sur reply practice, has forced the Plan and its administrator to incur unnecessary attorney's fees and costs to defend their ERISA obligations and protect ERISA-governed Plan assets.

157. The public interest favors injunctive relief because Congress established a comprehensive federal scheme governing ERISA plans, including fiduciary duties, anti-alienation protections, QDRO requirements, and federal remedies for fiduciaries seeking equitable relief.

158. The Anti-Injunction Act does not bar the requested injunction. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) expressly authorizes fiduciaries to seek federal injunctive relief to prevent violations of ERISA and the terms of an ERISA plan, and ERISA actions by fiduciaries fall within the federal courts' exclusive jurisdiction. 28 U.S.C. § 2283; ERISA §§ 502(a)(3), 502(e)(1); 29 U.S.C. §§ 1132(a)(3), 1132(e)(1). ///

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

159. Under the Supreme Court's "expressly authorized" exception, a federal statute need not expressly refer to 28 U.S.C. § 2283 or expressly mention state-court proceedings; it is sufficient that Congress created a specific and uniquely federal right or remedy enforceable in federal court that could be frustrated if federal courts could not enjoin the state proceeding. *Mitchum*, 407 U.S. at 237–38. In *AT&T*, the Central District of California held that the Anti-Injunction Act did not bar an ERISA plan and fiduciary from seeking injunctive relief against enforcement of California family court attorney's fee orders because ERISA specifically authorized that equitable relief. *Id.*, *AT&T,* 902 F. Supp. at 1172–74.

160. The requested injunction is narrowly tailored: Plaintiffs do not seek to enjoin the Superior Court from adjudicating the Robinson dissolution proceeding generally, to disturb ordinary domestic-relations matters between Ms. Robinson and Mr. Robinson, to prevent Ms. Robinson from seeking relief against Mr. Robinson personally, or to prevent the Plan from complying with any valid QDRO that satisfies ERISA and the Plan documents. Plaintiffs seek only to prevent enforcement of state-court orders against the Plan, its administrator, or its fiduciaries where enforcement would violate ERISA, the Plan documents, and ERISA's QDRO and anti-alienation requirements.

161. Plaintiffs are entitled to an order permanently enjoining Ms. Robinson, and her agents, representatives, attorneys, successors, employees, and all persons acting in concert with her, from continuing or initiating any proceedings to enforce compliance by Plaintiffs, or any of their agents, representatives, attorneys, successors, employees, fiduciaries, or administrators, with the Attorney's Fees Order or any similar order.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

1. For a declaration, as between Plaintiffs and Defendant Dana Davis Robinson, that the Attorney's Fees Order is preempted by ERISA § 514(a), 29 U.S.C.

§ 1144(a), and is invalid and unenforceable against the Plan, the Plan administrator, the Plan's fiduciaries, the Plan Committee, the Firm, and/or Principal Life Insurance Company;

2.     For a declaration, as between Plaintiffs and Defendant Dana Davis Robinson, that the Attorney's Fees Order violates ERISA and the Plan documents because it is not a QDRO and constitutes or requires a prohibited assignment, alienation, or use of Plan assets or Plan administration in violation of ERISA §§ 206(d)(1), 404(a)(1); 29 U.S.C. §§ 1056(d)(1);

3.     For a declaration, as between Plaintiffs and Defendant Dana Davis Robinson, that the Attorney's Fees Order requires the Plan's fiduciaries to violate ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), including by using or exposing Plan assets for a purpose not authorized by ERISA, the Plan documents, or a valid QDRO;

4.     For a declaration, as between Plaintiffs and Defendant Dana Davis Robinson, that the Attorney's Fees Order or any similar order is void or unenforceable because any payment required by the Attorney's Fees Order would necessarily come from ERISA-protected Plan assets given that the Plan administrator was not joined as a party to the dissolution proceeding and that the Plan has no assets separate from the Plan accounts of Mr. Robinson and other current and former Firm employees;

5.     For a declaration, as between Plaintiffs and Defendant Dana Davis Robinson, that any similar order requiring the Plan, the Plan administrator, the Plan's fiduciaries, the Plan Committee, the Firm, and/or Principal Life Insurance Company, to pay Dana Davis Robinson's attorney's fees or costs based on the Plan's ERISA-governed administration of domestic relations orders concerning Mr. Robinson's Plan benefits is preempted by ERISA, violates ERISA and the Plan documents, and is invalid and unenforceable against the Plan, the Plan administrator, the Plan's fiduciaries, the Plan Committee, the Firm, and/or Principal Life Insurance Company;

6.     For a permanent injunction enjoining Defendant Dana Davis Robinson, and her agents, representatives, attorneys, successors, employees, and all persons

acting in concert with her, from continuing or initiating any proceedings to enforce compliance by Plaintiffs, or any of Plaintiffs' agents, representatives, attorneys, successors, employees, administrators, or fiduciaries, with the Attorney's Fees Order or any similar order;

7.  For further necessary or proper relief under 28 U.S.C. § 2202;

8.  For an award against Defendant Dana Davis Robinson of Plaintiffs' reasonable attorney's fees and costs under ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1), based on Plaintiffs' success in enforcing ERISA, Ms. Robinson's continued pursuit of relief contrary to ERISA and the Plan documents, and the bad-faith, dilatory, and improper litigation tactics alleged herein, including delayed service, ignored service requests, improper communications with represented Plan personnel, and untimely sur reply practice, all of which forced the Plan and its fiduciaries to incur unnecessary attorney's fees and costs to protect ERISA-governed Plan assets and fiduciary obligations;

9.  For costs of suit; and

10.  For such other and further relief as the Court deems just and proper.

Dated: July 13, 2026

**DLA PIPER LLP (US)**

By: _____
JONATHAN G. ROSE
ROBERT R. YAP

Attorneys for Plaintiffs
DLA PIPER LLP (US) PROFIT SHARING
AND 401K SAVINGS PLAN and PLAN
COMMITTEE

-36-
**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**